**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

SAN FRANCISCO COMPREHENSIVE )
TOURS, LLC, )
) Case No.: 2:20-cv-02117-GMN-DJA
        Plaintiff, )
) **ORDER**
  vs. )
)
TRIPADVISOR, LLC and VIATOR, INC., )
)
        Defendants. )
)

Pending before the Court is the Motion to Dismiss, (ECF No. 15), filed by Defendants Tripadvisor, LLC ("Tripadvisor") and Viator, Inc. ("Viator") (collectively, "Defendants"). Plaintiff San Francisco Comprehensive Tours, LLC ("Plaintiff") filed a Response, (ECF No. 16), to which Defendants filed a Reply, (ECF No. 17). For the reasons discussed below, the Court **GRANTS** Defendants' Motion to Dismiss.

**I.**     **BACKGROUND**

This case arises out of Defendants' alleged anti-competitive behavior and trademark infringement in the course of offering guided tour services in San Francisco, Napa Valley, and New York City. (*See generally* Compl., ECF No. 1).

In 2004, Plaintiff began providing guided tour services in San Francisco. (*Id*. ¶ 51). These services are guided tours provided via some means of transport, including, but not limited to, automobiles, sport utility vehicles, vans, shuttles, limousines, trains, boats, and ferries (the "Guided Tour Services"). (*Id*. ¶ 34). In 2007, Plaintiff expanded its business to Napa Valley, and between 2010 and 2019, to New York City. (*Id*. ¶¶ 54, 58).

Plaintiff, at an unknown date, contracted with Tripadvisor to list its Guided Tour Services on Tripadvisor's website. (*Id*. ¶ 90). Tripadvisor owns and operates aggregator

websites, which collect and display links to the websites of service providers in various markets, including the alleged markets of San Francisco, Napa Valley, and New York City. (*Id.* ¶ 66). Through its websites, Tripadvisor gives consumers the ability to purchase guided tour services within the relevant market. (*Id.* ¶ 78). Tripadvisor's online functionality is designed in a manner to communicate to consumers that Tripadvisor is the end service provider providing those purchased guided tour services. (*Id.* ¶ 79). Tripadvisor's websites also publish customer reviews. (*Id.* ¶ 116).

Tripadvisor owns multiple subsidiaries and affiliates ("Tripadvisor Entities"), one of which is Viator. (*Id.* ¶ 43). Viator owns and operates a website that advertises guided tour services, including Plaintiff's, in San Francisco, Napa Valley, and New York City. (*Id.* ¶¶ 45–47). According to Plaintiff, Tripadvisor, through its dominance of Viator, has a market share significantly larger than 55% in the relevant San Francisco, Napa Valley, and New York City markets. (*Id.* ¶¶ 91–93). Plaintiff broadly alleges that Defendants unlawfully engaged in double-serving, charged an exorbitant commission fee to list on Defendants' websites, used its trademarks without authorization, and falsely advertised services on their websites. (*Id.* at 7–17).

**A. Double-Serving**

Double-serving is a search engine optimization methodology intended to increase a website's visibility on a search results page in search engine websites like Google, Yahoo!, and Bin. (*Id.* ¶ 24). To optimize viewability of links and defeat viewability of competing websites, a business entity and a "strawman" subsidiary both submit bids to a pay-per-click keyword auction for a particular search word or term on a search engine website. (*Id.* ¶ 124). By taking up the top results of a search result list, other providers' websites are consequently forced to lower positions on the search result list, where it is significantly less likely a potential customer will click on those links. (*Id.* ¶ 131).

Plaintiff alleges that Tripadvisor, through its dominance and control of Viator, the alleged "strawman," increased the probability in which Defendants' websites populated above other service providers' websites in a keyword-based search on search engine websites such as Google, Yahoo!, and Bing. (*Id*. ¶ 127). Defendants' websites, Plaintiff alleges, are deliberately optimized by Tripadvisor to appear on search engine websites in near proximity to each other and above Plaintiff's websites within the relevant market. (*Id*. ¶¶ 75–77). Through this methodology, Defendants purportedly obtain twice as much information regarding other Service Providers' bids in a keyword auction, which allows Defendants to submit more competitive bids in future auctions. (*Id*. ¶ 140).

### B. Commission Fee

In exchange for displaying links to service providers' websites, Tripadvisor charges service providers of guided tour services, like Plaintiff, a thirty-percent (30%) commission based on gross ticket sales of the service providers' services for Tripadvisor. (*Id*. ¶ 78). When a service provider does not pay the commission, Tripadvisor publishes a statement on its website announcing that the provider's guided tour services are "unavailable." (*Id*. ¶ 87). The "unavailable" sign, Plaintiff alleges, leads a reasonable consumer to believe the guided tour services are generally unavailable. (*Id*.). Plaintiff alleges that it felt forced to enter into contracts with Tripadvisor as a last-ditch effort to avoid going out of business. (*Id*. ¶ 90).

### C. Trademark Infringement

Plaintiff, in 2004, began using the service mark, "SAN FRANCISCO COMPREHENSIVE SHUTTLE TOURS" in the course of its business. (*Id*. ¶ 51). As part of its business, Plaintiff developed and published a variety of marketing tools, including visual displays, designs, sales material, and other images and text that allegedly also constitute trademarks, service marks, and copyrights. (*Id*. ¶ 52). Plaintiff alleges that Tripadvisor used, without authorization or license, Plaintiff's service marks and trade dress on Tripadvisor's

websites. (*Id*. ¶¶ 97–108).  Additionally, Plaintiff claims that Tripadvisor used, without authorization or license, Plaintiff's commercial properties in San Francisco, Napa Valley, and New York City. (*Id*. ¶¶ 109–114).

### D. False Advertising

Plaintiff lastly alleges that Defendants advertise without registration through local state commissions and fail to obtain the appropriate state and local permits and licenses to operate in California and New York. (*Id*. ¶¶ 142–147).

On November 18, 2020, Plaintiff filed a Complaint against Defendants. (*See generally* Compl., ECF No. 1).  Plaintiff asserts twenty-nine (29) causes of action, including: (1) attempt to monopolize and monopolization in violation of 15 U.S.C. § 2; (2) conspiracy in restraint of trade in violation of 15 U.S.C. § 1; (3) registered trademark infringement in violation of 15 U.S.C. § 1125(a); (4) false advertising in violation of 15 U.S.C. § 1125(a); (5) registered trademark infringement under state law; (6) interference with contractual relations under state law; and (7) misappropriation of commercial properties under state law. (Compl. ¶¶ 151–373). Defendants filed the instant Motion to Dismiss on the following grounds: (1) lack of personal jurisdiction under Rule 12(b)(2) and (2) failure to state a plausible claim under Rule 12(b)(6). (*See* Defs.' Mot. Dismiss ("MTD"), ECF No. 15).

## II.   LEGAL STANDARD

### A. Motion to Dismiss under Rule 12(b)(2)

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move to dismiss for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2).  Once a defendant raises the defense, the burden falls on the plaintiff to prove sufficient facts to establish that jurisdiction is proper. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).  A plaintiff can carry its burden only by presenting sufficient evidence to establish that (1) personal jurisdiction is proper under the laws of the state where it is asserted; and (2) the exercise of

1  jurisdiction does not violate the defendant's right to due process secured by the United States

2  Constitution. *Ziegler v. Indian River Cty.*, 64 F.3d 470, 473 (9th Cir. 1995).

3        When no federal statute governs personal jurisdiction, the district court applies the law of

4  the forum state. *See Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998).

5  Nevada has authorized its courts to exercise jurisdiction over persons "on any basis not

6  inconsistent with . . . the Constitution of the United States." NRS 14.065.  Thus, the Due

7  Process Clause of the Fourteenth Amendment is the relevant constraint on Nevada's authority

8  to bind a nonresident defendant to a judgment of its own courts. *World Wide Volkswagen Corp.*

9  *v. Woodson*, 444 U.S. 286, 291, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980).

10       The Due Process Clause requires that the nonresident must have "certain minimum

11 contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair

12 play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154,

13 90 L. Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 85 L. Ed. 278

14 (1940)).  To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only

15 make "a prima facie showing of jurisdictional facts." *Pebble Beach Co. v. Caddy*, 453 F.3d

16 1151, 1154 (9th Cir. 2006) (quoting *Doe v. Unocal*, 248 F.3d 915, 922 (9th Cir. 2001)).  When

17 analyzing such a 12(b)(2) motion, "the court resolves all disputed facts in favor of the

18 plaintiff." *Id*.

19     **B.  Motion to Dismiss under Rule 12(b)(6)**

20       Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon

21 which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

22 555 (2007).  A pleading must give fair notice of a legally cognizable claim and the grounds on

23 which it rests, and although a court must take all factual allegations as true, legal conclusions

24 couched as a factual allegations are insufficient. *Twombly*, 550 U.S. at 555.  Accordingly, Rule

25 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements

of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). "However, material which is properly submitted as part of the complaint may be considered." *Id.* Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). On a motion to dismiss, a court may also take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if a court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

//

## III. DISCUSSION

Defendants move to dismiss Plaintiff's Complaint on following grounds: (1) NRS 86.548 bars Plaintiff from bringing suit in Nevada because it is not registered with the Secretary of State as a foreign limited-liability company;[1] (2) Plaintiff's causes of action are not cognizable claims upon which relief may be granted; and (3) the Court is without personal jurisdiction over Defendants given their lack of contacts with Nevada. (MTD 1:13–2:14).  If any claims survive, Defendants move to transfer all remaining claims to the District of Massachusetts pursuant to 28 U.S.C. § 1404(a). (*Id.* 2:15–16).

### A. Personal Jurisdiction

Defendants move to dismiss Plaintiff's Complaint for lack of personal jurisdiction. (*Id.* 15:25–21:15).  In its Complaint, Plaintiff asserts that the Court has personal jurisdiction over Defendants under 15 U.S.C. § 22 "because Defendants transact business in the District of Nevada and are hereby the subject of a proceeding under the antitrust laws of the United States." (Compl. ¶ 6).

"To exercise personal jurisdiction over a non-resident defendant in a federal question case, the district court [must first] determine that a rule or statute potentially confers jurisdiction over the defendant and then conclude that asserting jurisdiction does not offend the principles of Fifth Amendment due process." *Go-Video, Inc. v. Akai Elec. Co., Ltd.*, 885 F.2d 1406, 1413 (9th Cir. 1989).  "A statutory basis for exercising personal jurisdiction may be found in a statute providing for service of process." *Action Embroidery Corp. v. Atl.*

---

[1] Defendant argues that under NRS 86.548, Plaintiff is precluded from bringing this action because Plaintiff is not registered to do business as a foreign limited-liability company in Nevada. (MTD 6:18–7:1).  Defendant thus requests that the Court stay the case pending Plaintiff's compliance with Nevada's registration requirements under NRS 86.548. (*Id.* 6:26–27).  Under Nevada law, a foreign limited-liability company must register with the secretary of state before doing business in Nevada. NRS 86.544(1).  "Maintaining, defending or settling any proceeding" does not, however, constitute "business transacting" under NRS 86.544. *See* NRS 86.5483(1)(a).  Because Plaintiff's lawsuit serves as its only point of contact with Nevada, Plaintiff is not "transacting business" as defined under NRS 86.544.  Plaintiff, therefore, is not required to register with the Secretary of State, and the case may proceed.

*Embroidery, Inc.*, 368 F.3d 1174, 1177 (9th Cir. 2004).  Section 12 of the Clayton Act provides as follows:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

15 U.S.C. § 22.  The Court begins by discussing whether it has personal jurisdiction over Tripadvisor before addressing Viator.

### i. Defendant Tripadvisor, LLC

Defendants argue that the Court lacks personal jurisdiction over Tripadvisor because Section 12 of the Clayton Act does not apply to limited liability companies like Defendant Tripadvisor. (MTD 16:16–17:5).  The Court agrees.  Multiple district courts and the Third Circuit have strictly construed the statute and excluded limited liability companies from Section 12 of the Clayton Act. *See Orange Theatre Corp. v. Rayherstz Amusement Corp.*, 139 F.2d 871, 875 (3d Cir. 1944); *Thill Securities Corporation v. New York Stock Exchange*, 283 F. Supp. 239, 242 (E.D. Wis. 1968); *McManus v. Tato*, 184 F. Supp. 958, 959 (S.D.N.Y. 1959); *Pacific Seafarers, Inc. v. Pacific Far East Line*, 48 F.R.D. 347, 349 (D.C.D.C. 1969).  Similarly here, Plaintiff is not a corporation, so Section 12 of the Clayton Act does not apply to Plaintiff.  (Compl. at 1) ("Plaintiff is a California limited liability company. . . .").  The Court sees no reason to depart from the other courts' plain language reading of Section 12 of the Clayton Act.  Of note, Plaintiff does not provide any persuasive caselaw in support of its liberal interpretation of Section 12.  Accordingly, the Court finds that it lacks personal jurisdiction over Tripadvisor and grants Defendant's Motion to Dismiss as to Defendant Tripadvisor.

### ii. Defendant Viator, Inc.

Defendants additionally assert that the Court lacks personal jurisdiction over Viator because: (1) without sufficiently pled antitrust claims, Section 12 of the Clayton Act no longer

applies; (2) Defendants are not subject to general jurisdiction in Nevada; and (3) the Court lacks specific jurisdiction over Defendants. (MTD 17:6–21:15).  Plaintiff concedes that if all antitrust claims are dismissed as to both Defendants, then there would be no basis for pendant personal jurisdiction over the non-antitrust claims. (Resp. to MTD at 21, n.7).  Further, Plaintiff also admits that there is no general or specific jurisdiction over Defendants. (*Id.*).

Thus, the only applicable basis for personal jurisdiction is Section 12 of the Clayton Act. The Court accordingly discusses whether Plaintiff plausibly alleges antitrust claims to determine whether the Court has personal jurisdiction over Viator.

**B. Failure to State a Claim**

Plaintiff asserts two antitrust claims under the Clayton Act: (1) attempt to monopolize and monopolization in violation of 15 U.S.C. § 2; and (2) conspiracy in restraint of trade in violation of 15 U.S.C. § 1. (Compl. ¶¶ 151–211).  The Court begins by discussing Plaintiff's first claim under Section 2 before turning to the conspiracy in restraint of trade claim under Section 1.

i. Monopolization Under 15 U.S.C. § 2, (Claims 1–6)

Defendants argue that Plaintiff's antitrust claims must be dismissed because Plaintiff fails to assert an antitrust injury. (MTD 7:15–9:8).  Specifically, Defendants assert that they are not competitors or consumers in the relevant market with Plaintiff, who, unlike Defendants, provide guided tour services. (*Id.*).  In rebuttal, Plaintiff contends that Defendants are market participants in the relevant markets because Defendants (1) allegedly serve as the center of the marketplace for Guided Tour Services; (2) owe obligations to consumers when Defendants sell Guided Tour Services; and (3) exercise control of the relevant markets to benefit certain Service Providers. (Pl.'s Resp. to MTD 8:19–22, ECF No. 16).

To sufficiently allege an antitrust injury, a plaintiff must meet the following requirements: (1) unlawful conduct; (2) causing an injury to the plaintiff; (3) that flow from that

which makes the conduct unlawful; and (4) is the type the antitrust laws were intended to prevent. *Am. Ad Mgmt., Inc. v. Gen. Tel. Co.*, 190 F.3d 1051, 1054 (9th Cir. 1999).  The Ninth Circuit includes an additional, corollary principle that "the injured party be a participant in the same market as the alleged malefactors." *Id*. at 1057.  "Parties whose injuries, though flowing from that which makes the defendant's conduct unlawful, are experienced in another market do not suffer antitrust injury." *Id*.

In *Bhan v. NME Hosps., Inc.*, 772 F.2d 1467, 1470 (9th Cir. 1985), the Ninth Circuit determined that nurse anesthetists and M.D. anesthesiologists participate in a single anesthesia services market because both professions effectively provide the same services. *Bhan*, 772 F.2d at 1471.  "In analyzing whether nurse anesthetists and M.D. anesthesiologists participate in the same market, the focus is upon the reasonable interchangeability of use or the cross-elasticity of demand between the services provided by nurse anesthetists and by M.D. anesthesiologists." *Id*. at 1470–71.  Though the legal restrictions upon nurse anesthetics created a functional distinction between nurses and anesthesiologists, the Court ultimately determined that such distinction did not preclude "cross-elasticity of demand sufficient to constrain the market power of M.D. anesthesiologists and thereby to affect competition." *Id*. at 1471.

In contrast, another court in this district determined that Groupon did not compete in the same market as a skydiving company because "Groupon [does not provide] services that are interchangeable with other tandem skydiving service providers as required to be part of the same market." *Las Vegas Skydiving Adventures LLC v. Groupon, Inc.*, No. 2:18-cv-02342-APG-VCF, 2019 U.S. Dist. LEXIS 183944, at *7 (D. Nev. Oct. 23, 2019).  There, Plaintiff alleged that the relevant market consists of "businesses that sell[] the Relevant Services to residents of and visitors to southern Nevada who wish to have the experience of jumping out of an airplane while tethered to an experienced parachutist." *Id*. at 6–7.  Because Groupon sold

discount certificates but did not sell or otherwise provide skydiving services itself, the Court dismissed with prejudice the antitrust causes of action under Section 2 of the Sherman Act. *Id*.

Likewise, Plaintiff has not plausibly alleged that Tripadvisor provides the same, interchangeable services for guided service tours. Plaintiff defines the relevant market as providers who "engage in the business of offering guided tour services to customers via some means of transport, in whole or in part, including, but not limited to, automobiles, sport utility vehicles, vans, shuttles, limousines, trains, boats, and ferries." (Compl. ¶¶ 34–35). Plaintiff directly provides guided tour services whereas Defendants advertise guided tour services on their websites. *Las Vegas Skydiving Adventures LLC v. Groupon, Inc.*, No. 2:18-cv-02342-APG-VCF, 2019 U.S. Dist. LEXIS 183944, at *7 (D. Nev. Oct. 23, 2019) ("Providing discount certificates to customers seeking tandem skydiving services is different (and a separate market) from providing tandem skydiving services."). As alleged in the Complaint, Defendants own and operate aggregator websites, which collect and display links to the websites of Service Providers. (Compl. ¶¶ 66, 45–47). Like the Court found in *Las Vegas Skydiving Adventures LLC*, Plaintiff has not shown that the parties in the present case provide interchangeable services.

Plaintiff argues that it sufficiently alleged that Defendants are competitors because Defendants provide a reasonable substitute in the relevant market for guided tour services. (Pl.'s Resp. to MTD 11:10–12). Relying on *Bhan*, Plaintiff analogizes that Defendants, like the nurse anesthetists who required a supervising attending physician to provide services, provide a reasonable substitute because they ultimately sell guided tour services. (*Id*.). However, as Defendants succinctly state, "providing an advertising outlet for a product or providing a booking service is not the same as providing a product." (Reply 4:1–2). Unlike the nurses in *Bhan* who could ultimately provide anesthesia services, Defendants do not, and cannot, offer guided tours in the relevant market. Defendants, therefore, do not provide a reasonable

substitute in the relevant market.  Because Plaintiff cannot demonstrate that the parties are participants in the same relevant market and further, that Plaintiff suffered an antitrust injury, Plaintiff does not have standing to bring an antitrust suit.  Accordingly, the Court dismisses Plaintiff's antitrust claims, namely Claims 1–6, with prejudice.

        ii. <u>Conspiracy in Restraint of Trade Under 15 U.S.C. § 1 (Claims 7–9)</u>

  Plaintiff alleges that Defendants conspired to restrain trade and/or commerce by decreasing access to the top two search results on search engine websites and by increasing the price per click of competing service providers. (Compl. ¶¶ 202–213).  Defendants move to dismiss such claims, arguing that Supreme Court precedent establishes that a parent company and wholly owned subsidiary cannot "conspire" within the meaning of Section 1 of the Clayton Act. (MTD 10:7–14).

  "[T]he coordinated activity of a parent and its wholly owned subsidiary must be viewed as that of a single enterprise for purposes of § 1 of the Sherman Act.  A parent and its wholly owned subsidiary have a complete unity of interest." *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 771–72, 777 (1984).  As listed in Defendants' Certificate of Interested Parties, "Defendant Viator, Inc. is a wholly-owned subsidiary of Tripadvisor LLC." (*See* Defs.' Certificate of Interested Parties 1:26, ECF No. 12).  Defendants Tripadvisor and Viator, therefore, cannot "conspire" for purposes of Section 1 of the Sherman Act as a matter of law.  The Court accordingly grants Defendant's Motion to Dismiss as to Claims 7 through 9.

  Because no antitrust claims remain, Section 12 of the Clayton Act does not apply, and the Court lacks personal jurisdiction over Defendant Viator.  The Court accordingly grants Defendants' Motion to Dismiss.

///

IV. **CONCLUSION**

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, (ECF No. 15), is **GRANTED**.

**DATED** this __24__ day of September, 2021.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT